IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

John R. Tomlinson,

      Plaintiff,                     Case No. 2:09-cv-0125

    v.                           JUDGE FROST

Director Terry Collins,        MAGISTRATE JUDGE KEMP
et al.,

      Defendants.


OPINION AND ORDER

On October 25, 2010, the Magistrate Judge issued a Report
and Recommendation concerning the motion for summary judgment
filed by defendants Terry Collins, John DesMarias, Ikenna Nzeogu,
D.O., Karen Stanforth, and Sajjad Siddiqi, M.D., as well as the
defendants' motion to strike certain exhibits attached to
plaintiff John Tomlinson's memorandum in opposition.  The
Magistrate Judge recommended that the motion to strike be denied
and that the motion for summary judgment be granted.  Both the
defendants and Mr. Tomlinson filed timely objections.  Based on
the foregoing reasons, the Court will overrule the objections
(docs. 60, 61) and adopt the Report and Recommendation (doc. 59)
in its entirety.  Accordingly, the motion to strike (doc. 52)
will be denied and the motion for summary judgment (doc. 49) will
be granted.

I.

When objections are received to a report and recommendation
on a dispositive matter, the District Judge "must determine de
novo any part of the magistrate judge's disposition that has been
properly objected to."  Fed. R. Civ. P. 72(b)(3).  After review,
the District Judge "may accept, reject, or modify the recommended
disposition; receive further evidence; or return the matter to

the magistrate judge with instructions."  Id.; see also 28 U.S.C.
§636(b)(1)(C).

                                II.

     The defendants argue that the Magistrate Judge erred when he
did not strike various exhibits from Mr. Tomlinson's memorandum
in opposition to their motion for summary judgment (doc. 51).
These exhibits include an Affidavit of Henry H. Gary, M.D. dated
July 26, 2010 (Exh. 26); a Stipulation for Injunctive Relief
filed on November 22, 2005 in Fussell v. Wilkinson, Case No. C-1-
03-704 (Exh. 27); a letter from Dr. Ward Buster to Dr. Dennis
Flynn dated July 14, 2010 (Exh. 28); a Certificate of Disability
for the Homestead Exemption of John Tomlinson effective January
1, 2010 (Exh. 29); a letter from Dr. Flynn to Mr. Tomlinson's
attorney, Paula J. Copeland, dated February 6, 2009 (Exh. 30);
and an evaluation of Mr. Tomlinson's medical records prepared by
Dr. Gary on April 16, 2010 (Exh. 31).  The same exhibits were the
subject of the defendants' motion to strike (doc. 52).

     The Magistrate Judge recommended that the motion to strike
be denied only as to the statements made by Dr. Buster and Dr.
Gary regarding the potential effects of delay in Mr. Tomlinson's
diagnosis and treatment.  Counsel for Mr. Tomlinson expressly
agreed that Exhibit 27 cannot be used in this case and that
Exhibit 29 is not relevant to the issues herein.  Accordingly,
the Magistrate Judge was not required to consider the
admissibility of these two exhibits because those aspects of the
motion to strike had become moot.

     The defendants nonetheless express concern that Exhibits 27
and 29 remain in the record.  However, these exhibits  played no
part in the Magistrate Judge's analysis of the motion for summary
judgment and there is no reason to believe that they will be
considered inadvertently on appeal.  Hence, the Magistrate Judge
did not err by failing to strike them.

The defendants also argue that Exhibits 28 and 30 should have been stricken because neither letter was authenticated when attached.  Since that time, however, Mr. Tomlinson has submitted affidavits from Dr. Flynn (doc. 55-11) and Dr. Buster (doc. 56-10) which attest to the authenticity of the two letters.  The defendants do not address this fact, but simply cite to two unreported decisions of the Sixth Circuit Court of Appeal which stand for the proposition that unauthenticated documents do not satisfy the requirements of Fed. R. Civ. P. 56(e) and should therefore not be considered on a motion for summary judgment. See David A. Flynn, Inc. v. General Motors Acceptance Corp., 345 Fed.Appx. 974, 978-79 (6th Cir. 2009); Magnum Towing & Recovery v. City of Toledo, 287 Fed.Appx. 442, 448 (6th Cir. 2008).  That does not mean that the documents need to be stricken simply because they were not authenticated when appended, especially when, as here, the party seeking exclusion does not actually contend that they are not what the proponent claims them to be. See Evans v. Board of Educ. Southwestern City School Dist., Case No. 2:08-cv-794, 2010 WL 1849273 at *3 (S.D. Ohio Apr. 29, 2010). In such circumstances, it is appropriate to allow the proponent additional time to authenticate the documents in question.  See id.  Because Mr. Tomlinson had already authenticated the two letters in question through proper affidavits at the time the Report and Recommendation issued, the Magistrate Judge did not err in declining to strike Exhibits 28 and 30.

With regard to Exhibits 26 and 31, the defendants argue that Dr. Gary's affidavit and report should have been stricken from the record primarily because Mr. Tomlinson's counsel failed to comply with Fed. R. Civ. P. 26(a).  The defendants specifically contend that Exhibit 31 does not meet any of the six requirements mandated by Rule 26(a)(2)(B)(i)-(iv) for an expert witness's written report.  The defendants further state that Mr.

Tomlinson's counsel never supplemented the report as required, but instead tendered an affidavit from Dr. Gary (Exh. 26) two weeks after they filed their motion for summary judgment. According to the defendants, Exhibit 26 was clearly  untimely under Fed. R. Civ. P. 26(e), and consequently that the Magistrate Judge should have excluded the affidavit pursuant to Fed. R. Civ. P. 37(c)(1).  Lastly, the defendants claim that Mr. Tomlinson's counsel failed to qualify Dr. Gary as an expert and that the opinions he expressed in Exhibits 26 and 31 do not meet the minimum standards for reliability and relevancy required under Fed. R. Evid. 702.

Assuming that Mr. Tomlinson's counsel failed to comply with Rule 26(a) and (e), exclusion of Dr. Gary's affidavit and report is not automatic.  See Fed. R. Civ. P. 37(c)(1); Samos Imex Corp. v. Nextel Communications, Inc., 194 F.3d 301 (1st Cir. 1999). Rather, a trial judge should not exclude expert testimony unless the failure to disclose testimony or to supplement such disclosures is both unjustified and harmful.  United States v. Rapanos, 376 F.3d 629, 644-45 (6th Cir. 2004), vacated on other grounds, 547 U.S. 715 (2006).  The failure to provide the information earlier must result in prejudice.  Lozano v. City of Hazelton, 241 F.R.D. 252, 258 (M.D. Pa. 2007).  Where the evidence is disclosed in time for the opposing party to respond, any violation of Rule 26 is harmless.  Russell v. Bronson Heating and Cooling, 345 F.Supp.2d 761 (E.D. Mich. 2004).  Finally, in considering the admissibility of expert opinion evidence under Rule 702, a trial judge has broad discretion.  Brainard v. American Skandia Life Assur. Corp., 432 F.3d 655, 663 (6th Cir. 2005); see also Lozano, 241 F.R.D. at 258-59 (rejecting relevancy and reliability arguments advanced by plaintiffs).

The Magistrate Judge saw no need to strike Dr. Gary's affidavit and report because, in weighing their evidentiary

value, he concluded that the opinions expressed in Exhibits 26
and 31 were not probative enough to create a factual issue as to
whether any delay in treatment harmed Mr. Tomlinson.  The Court
will address this overarching issue in greater detail when it
conducts a de novo review of the recommended disposition of the
defendants' summary judgment motion.  At this point, it suffices
to say that as long as the Court ultimately agrees with the
Magistrate Judge regarding the probative value of Dr. Gary's
medical opinions, there was no error in his having considered
Exhibits 26 and 31.

### III.

Mr. Tomlinson presents two objections to the Report and
Recommendation, both directed to the recommended disposition of
the defendants' summary judgment motion.  First, he denies that
he was required to proffer medical evidence verifying that the
delay in treatment caused him serious injury.  Second, he
contends that the evidence was sufficient for a finding that Dr.
Siddiqi and Dr. Nzeogu were deliberately indifferent to his
medical needs.  Mr. Tomlinson did not object to the recommended
summary judgment in favor of defendants Collins, DesMarias and
Stanforth, so the Court may simply accept that portion of the
Report and Recommendation without further discussion.

### IV.

Although summary judgment should be cautiously invoked, it
is an integral part of the Federal Rules, which are designed "to
secure the just, speedy and inexpensive determination of every
action."  Celotex Corp. v. Catrett, 477 U.S. 317, 327
(1986)(quoting Fed. R. Civ. P. 1).  The standard for summary
judgment is found in Rule 56 of the Federal Rules of Civil
Procedure:

> [Summary judgment] ... should be rendered if the
> pleadings, the discovery and disclosure materials
> on file, and any affidavits show that there is no

> genuine issue as to any material fact and that the
> movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).

Summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is... [and where] no genuine issue remains for trial, ... [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 467 (1962)(quoting Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944)). See also Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. Lashlee v. Sumnner, 570 F.2d 107, 111 (6th Cir. 1978). The Court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Weaver v. Shadoan, 340 F.3d 398, 405 (6th Cir. 2003).

In a motion for summary judgment, the moving party bears the initial burden of showing that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law. Leary v. Daeschner, 349 F.3d 888, 897 (6th Cir. 2003). All the evidence and facts, as well as the inferences to be drawn from the underlying facts, must be considered in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Wade v. Knoxville Util. Bd., 259 F.3d 452, 460 (6th Cir. 2001). Additionally, any "unexplained gaps" in materials submitted by the moving party, if pertinent to material

issues of fact, justify denial of a motion for summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-60 (1970).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48 (emphasis in original). A "material" fact is one that "would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984). See also Anderson, 477 U.S. at 248. An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. See also Leary, 349 F.3d at 897.

If the moving party meets its burden, and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. The nonmoving party must demonstrate that "there is a genuine issue for trial," and "cannot rest on her pleadings." Hall v. Tollet, 128 F.3d 418, 422 (6th Cir. 1997).

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must-by affidavits or as otherwise provided by this rule-set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of
the opposing party's position is insufficient; there must be
evidence on which the jury could reasonably find for the opposing
party.  Anderson, 477 U.S. at 252.  The nonmoving party must
present "significant probative evidence" to demonstrate that
"there is [more than] some metaphysical doubt as to the material
facts."  Moore v. Phillip Morris Companies, 8 F.3d 335, 340 (6th
Cir. 1993).  The court may, however, enter summary judgment if it
concludes that a fair-minded jury could not return a verdict in
favor of the nonmoving party based on the presented evidence.
Anderson, 477 U.S. 251-52; Lansing Dairy, Inc., 39 F.3d at 1347.

V.

To establish an Eighth Amendment violation, a prisoner must
show that he or she has a serious medical condition and that the
defendants displayed a deliberate indifference to his or her
health.  Estelle v. Gamble, 429 U.S. 97 (1976); Wilson v. Seiter,
501 U.S. 294 (1991).  This formulation has both a subjective and
an objective component.  Dominquez v. Correctional Medical Serv.,
555 F.3d 543, 550 (6th Cir. 2009).  Objectively, the medical
condition must be substantially serious.  Farmer v. Brennan, 511
U.S. 825, 834 (1994).  Subjectively, the defendants accused of
violating the Eighth Amendment must have acted with a state of
mind that can accurately be described as "deliberate
indifference."  Id.  Each of these components requires some
elaboration.

It is not always easy to distinguish serious medical
conditions from those that are not sufficiently substantial to
implicate the Constitutional prohibition against cruel and
unusual punishment, and the facts concerning the seriousness of
an inmate's condition are frequently in dispute.  In evaluating
such claims, courts have given weight to a variety of factors,

including whether the condition is one that a doctor or other health care professional would find worthy of treatment, whether it causes (or, if left untreated, has the potential to cause) chronic and substantial pain.  See Chance v. Armstrong, 143 F.3d 698, 702-03 (2d Cir. 1998); see also Harrington v. Grayson, 811 F.Supp. 1221, 1226-28 (E.D. Mich. 1993)(focusing on the severity of the condition, the potential for harm if treatment is delayed, and whether such a delay actually caused additional harm).

Under some circumstances, expert testimony may be needed to establish the seriousness of a medical condition, particularly if the inmate's claim is founded upon an unreasonable delay in treatment.  See Napier v. Madison County, 238 F.3d 739, 742 (6th Cir. 2001).  In other cases, however, when the condition does not involve "minor maladies or non-obvious complaints of a serious need for medical care," but rather "an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers," expert testimony is not essential to a finding that a serious medical condition is present.  Blackmore v. Kalamazoo County, 390 F.3d 890, 898 (6th Cir. 2004).

As to the subjective component, in Farmer, 511 U.S. at 839, the Court adopted "subjective recklessness as used in the criminal law" as the appropriate definition for deliberate indifference.  It held that "a prison official cannot be liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety ...." Id. at 837.  Officials must be aware of facts from which they could conclude that a substantial risk exists and must actually draw that conclusion.  Id.  Prison officials who know of a substantial risk to the health or safety of an inmate are free from liability if "they responded reasonably to the risk, even if

-9-

the harm ultimately was not averted."  Id. at 844.

Because an Eighth Amendment medical claim must be premised on deliberate indifference, mere negligence by a prison doctor or prison official with respect to medical diagnosis or treatment is not actionable under 42 U.S.C. §1983.  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Estelle, 429 U.S. at 106; see also Brooks v. Celeste, 39 F.3d 125 (6th Cir. 1994).

VI.

As the Report and Recommendation sets forth in more detail, the event giving rise to Mr. Tomlinson's medical claim was a softball injury.  He claims not to have received appropriate treatment for that injury.  Mr. Tomlinson contends that his situation is more akin to that of the prisoner in Blackmore, who exhibited the classic symptoms of appendicitis.  He says that his severe pain, weakness, numbness, and inability to walk in a straight line or hold objects in his hand were likewise signs of a serious condition.  He further states that Dr. Siddiqi and Dr. Nzeogu observed these symptoms and his worsening condition on each subsequent visit, and he also argues that his need for immediate treatment was obvious to a lay person.  To support the latter contention, he attached to his objection an affidavit executed by Pastor Bruce Bell.

Pastor Bell was part of a faith-based ministry which became active in July 2006 at the Madison Correctional Institution where Mr. Tomlinson was incarcerated until his release on February 21, 2008.  Mr. Tomlinson was active in this program from the beginning and became one of its group leaders.  Pastor Bell describes Mr. Tomlinson that first year as very energetic,

gregarious, and physically active.  All of this changed in Summer 2007 when Mr. Tomlinson was injured while playing softball. After that incident, "[i]t was obvious to [Pastor Bell] that [Mr. Tomlinson] was in a great deal of pain."  Affidavit ¶3.  Because of this constant pain, Mr. Tomlinson would have to go "pill call" to get his medicine.  Id.  The crux of Pastor Bell's statement follows:

> It was obvious to me that the medicine did not really do much for the pain that he experienced.  It was also obvious to me that first time I saw him after his return to fellowship that the pain he experienced was as severe as a person suffering from an appendicitis, gall bladder, or heart attack. It was also obvious to me that the medical problems resulting from his injury were extremely serious, and that he was not being treated by the prison medical staff.

Id.

Plaintiff's counsel acknowledges that Pastor Bell's affidavit was never presented to the Magistrate Judge for his consideration.  She justifies this oversight on her belief that the progress notes in plaintiff's medical record and the length of time he suffered were sufficient to satisfy the obviousness test.  "However, the Magistrate Judge apparently missed from reading the medical record that Mr. Tomlinson was in an extreme amount of debilitating pain throughout the last seven months of his incarceration."  Plaintiff's Objections to Report and Recommendation p. 3.

De novo review of those portions of the Report and Recommendation requires at least a review of the evidence before the Magistrate Judge.  Kesler v. Barris, Sott, Denn & Driker, PLLC, 482 F.Supp.2d 886, 890 (E.D. Mich. 2007).  The Court may receive further evidence, but is not required to do so.  Id. Efforts to raise new evidence not before the Magistrate Judge are

generally disfavored, particularly where the objecting party
could have submitted this evidence much sooner.  <u>Virgin
Enterprises Ltd. v. Virgin Cuts, Inc.</u>, 149 F.Supp.2d 220, 223
(E.D. Va. 2000).

Counsel for Mr. Tomlinson now says that the medical progress
notes show that his need for immediate treatment was obvious to a
lay person.  However, she made no reference to those notes or to
the obviousness standard in her arguments before the Magistrate
Judge.  Instead, she specifically recognized the need under
<u>Napier</u> to place verifying medical evidence in the record.  <u>See</u>
Plaintiff's Memorandum in Opposition to Defendants' Motion for
Summary Judgment (doc. 51) p. 12.  Although she cites to
<u>Blackmore</u> in another context, plaintiff's counsel gave no
indication in her memorandum that Mr. Tomlinson was relying on
the obviousness standard to establish the objective component of
his Eighth Amendment claim.

The Magistrate Judge was not required to speculate on what
portions of the record the nonmoving party was relying upon.  <u>See
Interroyal Corp. v. Sponseller</u>, 889 F.2d 108, 111 (6th Cir.
1989).  Nor was he "obligated to wade through and search the
entire record for some specific facts that might support the
nonmoving party's claim."  <u>Id</u>.  Rather, it is the parties'
responsibility to designate the relevant portions of the record
with enough specificity so that the Magistrate Judge can readily
identify what facts each party was relying upon.  <u>Id</u>.

Although plaintiff's counsel's justification for not
offering Pastor Bell's affidavit sooner is weak, the Court will
exercise its discretion to consider the new evidence to the
extent it is appropriate to do so.  The Court will first examine
whether the affidavit satisfies the requirements of Fed. R. Civ.
P. 56(e).  A supporting or opposing affidavit must be made on
personal knowledge, lay out facts which would be admissible into

evidence, and demonstrate that the affiant is competent to testify as to the matters therein.

In his affidavit, Pastor Bell expresses certain opinions regarding Mr. Tomlinson's medical condition during the latter half of 2007.  To be admissible, the opinions of a lay witness must be (a) based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.  Fed. R. Evid. 701.  Lay testimony may be offered to prove physical conditions and pain and suffering to the extent that such matters are within the common perception of laypersons and as long as the opinion is based on the witness' own observations.  McDonald v. Great Atlantic & Pacific Tea Co., 37 N.E.2d 432 (Ohio Ct. App. 1941).  The lay witness, however, cannot draw inferences or express opinions based on knowledge that only a medical professional would possess.  See Newman v. Farmacy Natural & Specialty Foods, 861 N.E.2d 559 (Ohio Ct. App. 2006) (witness without formal medical training not qualified to testify on medical effects of plaintiff's alleged brain injury).

Using this criteria, the Court finds that Pastor Bell is competent to testify that Mr. Tomlinson was in severe pain, that his gait became slower and slower, and that his disposition changed from that of a very energetic and gregarious person to one characterized by caution and suffering.  Pastor Bell was able to make these personal observations over a relevant period of time, and the conditions he observed would commonly be perceived by laypersons.  Hence, these opinions are admissible.

On the other hand, Pastor Bell's opinion regarding the severity of the pain experienced by Mr. Tomlinson relative to a person suffering from appendicitis, gall bladder, or a heart attack would not be within the common observation of laypersons,

but would require specialized medical knowledge or experience on
his part.  He would also need specialized medical knowledge and
the benefit of an MRI to render an opinion concerning the extreme
seriousness of Mr. Tomlinson's injury.  Thus, neither of these
opinions is admissible under Rule 701.

The Court must also look to the stated purpose of Pastor
Bell's affidavit, i.e., to establish the obviousness of Mr.
Tomlinson's condition to a lay person.  The fact that a layperson
such as Pastor Bell could readily observe that Mr. Tomlinson was
in a great deal of pain and that his symptoms appeared to be
worsening does not in and of itself satisfy the "obviousness"
test.  See Cain v. Irvin, 286 Fed.Appx. 920, 927 (6th Cir.
2008)(test does not address whether the injury is merely
observable to bystanders, but whether layperson would perceive
need for immediate medical assistance).

In Blackmore, the inmate struggled with intense abdominal
pain and vomiting for two days before receiving medical
treatment.  It was not, however, the severity of his pain that
would have made the detrimental effect of a delay in treatment
obvious to a layperson.  Rather, it was the fact that he
exhibited classic symptoms of appendicitis and the common
knowledge that a delay in treatment presented a serious, if not
fatal, risk to the prisoner's health.  See Cain, 286 Fed.Appx. at
927.

In this case, Pastor Bell's affidavit establishes that Mr.
Tomlinson exhibited obvious signs of intense suffering.  Without
knowing what was causing these symptoms, a layperson, or even a
medical professional, could not have predicted that the failure
to obtain an MRI and a neurosurgery consult immediately would
lead to his serious residual health problems.  Mr. Tomlinson was
therefore required under Napier to place in the record medical
evidence showing that the delay in surgery allegedly caused by

-14-

the defendants' acts or omissions resulted in serious injury.  He
attempted to do so in the form of expert opinions by Dr. Buster
and Dr. Gary.  Having conducted a de novo review, the Court
concludes that a jury would not be entitled to find on the basis
of those medical opinions that the delay in treating Mr.
Tomlinson actually caused him any harm.   Consequently, Mr.
Tomlinson has failed to establish the objective component of his
Eighth Amendment claim.

VII.

 Mr. Tomlinson acknowledges that for either Dr. Siddiqi or
Dr. Nzeogu to be held liable, each must have been aware of a
substantial risk to plaintiff's health and have consciously
disregarded that risk.  Mr. Tomlinson also agrees that such
liability must arise from their own actions and not from the acts
of others.  He argues, however, that despite Dr. Siddiqi's and
Dr. Nzeogu's awareness of his medical condition, neither doctor
ensured that he obtained proper treatment for his injury in the
form of an MRI and neurosurgery consult.   Mr. Tomlinson
theorizes that Dr. Siddiqi and Dr. Nzeogu, by not following
through on their own directives, committed repeated acts of
negligence, which together constituted deliberate indifference.

 This theory, however, is problematic.  As Mr. Tomlinson
recognizes, repeated acts of negligence cannot alone amount to
deliberate indifference.  See Brooks, 39 F.3d at 127.  A
defendant must be "subjectively aware of a substantial risk of
harm."  Id. at 128.  Mr. Tomlinson believes that his medical
records show that both Dr. Siddiqi and Dr. Nzeogu were indeed
subjectively aware of a substantial risk of harm if they did not
follow through on their own directives.

 Mr. Tomlinson acknowledges that Dr. Siddiqi did not know of
the specific need to send him to a neurosurgeon until October 15,
2007, when he reviewed plaintiff's EMG results.  Mr. Tomlinson

-15-

nevertheless questions how a layperson such as Pastor Bell could recognize obvious signs of the need for emergency medical care by the Summer of 2007, when the same symptoms were seemingly ignored by Dr. Siddiqi.  He compares Dr. Siddiqi's actions to those of the jailers in <u>Blackmore</u> in making notes about plaintiff's complaints.  He also faults Dr. Siddiqi for ordering tests without any real authority to ensure that they were performed in a timely manner.  Mr. Tomlinson also acknowledges Dr. Nzeogu's efforts to get the testing done and infers from his November 23, 2007 progress notes that the doctor was aware of the seriousness of plaintiff's condition.  In plaintiff's opinion, both doctors failed to treat his case with the immediacy it required, but instead tried to work through the bureaucratic process.

Mr. Tomlinson further contends that the pain medicine he was given was not working and that he had to drop out of vocational maintenance at the end of September 2007 because he could not bend or kneel.  He reportedly told the doctors about his pain and numbness on each of his visits and also told them that he was having problems walking.  According to Mr. Tomlinson, his difficulty walking was a sign of myelopathy which should have alerted the doctors to the immediacy of his condition.  That fact was apparently obvious to Dr. Buster in March 2008, but Mr. Tomlinson points out that there is not a single notation in either Dr. Siddiqi's or Dr. Nzeogu's notes indicating that they had ever seen him walk.

The supposed failure of Dr, Siddiqi and Dr. Nzeogu to recognize the need for emergency care is, at best, indicative of malpractice on their part rather than deliberate indifference. The same can be said regarding whether they observed Mr. Tomlinson's gait and drew the proper conclusions from their observations.  Further, their choosing to work through the bureaucratic process in order to obtain an MRI and a neurosurgery

consult for Mr. Tomlinson is simply not probative of subjective
recklessness.  Mr. Tomlinson admits that neither doctor
apparently had any authority to ensure that the testing was
actually done.  Consequently, it was not unreasonable to attempt
to work through the bureaucratic process if they wanted their
directives carried out.

Finally, Mr. Tomlinson does not dispute that he was
receiving pain medication on a regular basis, only that the
medication was not working.  This complaint goes to the adequacy
of the treatment provided rather than the absence of treatment.
See Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976).
Because there is no medical evidence that the pain medication
given to Mr. Tomlinson was so woefully inadequate as to amount to
no pain medication at all, any claim regarding the efficacy of
the medication would sound in state tort law and would not rise
to the level of a constitutional claim.  See id.

The remainder of plaintiff's objection consists of efforts
to distinguish the actions of the defendants in Mabry v.
Antonini, 289 Fed. Appx. 895 (6th Cir. 2008) from those of Dr.
Siddiqi and Dr. Nzeogu in this case.  In Mabry, the Court of
Appeals determined that the treating physician and the
supervisory physician were not deliberately indifferent to the
inmate's serious medical needs based on their failure to secure a
more rapid second neurological consult where neither had control
over the scheduling process.  Id. at 901, 903.  In the panel's
view, Mabry's case was nearly identical to Estelle, where the
inmate had alleged that medical personnel were deliberately
indifferent by failing to use additional diagnostic techniques,
including an x-ray, in treating his back pain.  Id. at 902.  Just
as the Supreme Court found in Estelle, the Sixth Circuit held
that a claim that the doctor "did not order specific tests, or
provide specific medications, treatment, or dosages" does not

-17-

state a claim of deliberate indifference.  Id.

Mr. Tomlinson points out that Mably's condition (neurosarcoidosis) was rare and much more difficult to diagnose than his own radiculopathy.  He also argues that Mably's physicians were much more diligent than Dr. Siddiqi and Dr. Nzeogu and provided a much more rigorous treatment.  Neither of these distinctions, however, gives the Court reason to reach a different result in this case.  The bottom line is that Mr. Tomlinson received some medical treatment and the dispute concerns merely the adequacy of that treatment.  Under these circumstances, the Court will not second guess the medical judgments of Dr. Siddiqi and Dr. Nzeogu.  The Magistrate Judge thus did not fail to give proper weight to the evidence when he concluded that the defendants were not deliberately indifferent to Mr. Tomlinson's medical needs.

## VIII.

Based on the foregoing reasons, the Court, after conducting a de novo review, overrules the parties' objections (docs. 60, 61) and adopts the Report and Recommendation (doc. 59) in its entirety.  Accordingly, the defendants' motion to strike (doc. 52) is DENIED and the defendants' motion for summary judgment (doc. 49) is GRANTED.  The Clerk shall enter final judgment in favor of defendants Collins, DesMarias, Nzeogu, Stanforth, and Siddiqi.  This case is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.


        /S/   Gregory L. Frost
        Gregory L. Frost, Judge
        United States District Court

-18-